**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | |
| CHICKEN SOUP FOR THE SOUL ) | Chapter 7 |
| ENTERTAINMENT, INC., et al., ) | Bankruptcy Case No. 24-11442-MFW |
| ) | Bankr. BAP No. 25-0003 |
| Debtors. ) | |
| ——————————————) | |
| CHARLES MUSZYNSKI, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Civil Action No. 25-0052-GBW |
| ) | |
| CHAPTER 7 TRUSTEE GEORGE ) | |
| MILLER, ) | |
| ) | |
| Appellee. ) | |
| ——————————————) | |

RECEIVED
FEB 28 2025
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## APPELLANT'S REPLY TO APPELLEE'S MOTION TO DISMISS APPEAL

**TO THE HONORABLE COURT:**

1.  Now comes Charles Muszynski, pro se, an admitted and unobjected party in interest and responds and objects to Appellee's Motion to Dismiss Appeal by Ch. 7 Trustee, George Miller, ("Trustee" or "Appellee") for Estates of Chicken Soup For The Soul Entertainment Inc., ("CSSE"), et al., and Screen Media Ventures, LLC ("SMV").

2.  Significant basis was overlooked by the Court after Trustee mislead and "advised" the Court to improperly adopt a Retention Agreement incongruent with applicable Statute and case law and grant <u>retroactive</u> retention of Culpepper IP, LLLC, i.e., Kerry Culpepper ("Culpepper"), a one-lawyer "firm" as a "Special Counsel for Copyright Litigation".

3.  Record facts, Culpepper's admissions, and Police determinations prove Culpepper

holds and represents interests adverse to the Estates', committed criminal acts, owns 42 Ventures, LLC, one of scores of indispensably joined non-performing entities ("NPE") Creditors with SMV, with interests adverse to the Estates'. Culpepper's company and his joined "clients", alleged "movie company" NPE fronts, hold an unargued, unsecured, default judgment for alleged copyright infringement he fraudulently obtained in S.D. FL.

4. Appellee misled the Court multiple ways: (i) falsely claiming it complied with Federal Rules of Bankruptcy Procedure ("FRBP") 8004, 8014, and others where (ii) SMV and Estates' are indispensably joined with scores of unrelated Creditors, (iii) where no written waiver of Creditor allows Culpepper's retention, (iv) record facts show that Culpepper holds adverse pecuniary interests, (v) the false claim that Appellant's claim is for an interlocutory order requiring leave to appeal, (vi) while Trustee's counsel admits to not understanding Appellant's brief containing case and Statutory precedents prohibiting Culpepper's retention [Hrg. Tr. p.4, 12-15], (vii) Appellee falsely advised the Court retention was permissible, (viii) unconscionably and improperly induced the Court to cede its payment oversight authority to Trustee, (ix) where no extraordinary circumstances for retroactive engagement or payment to Culpepper exist, (x) ignored criminality proven by the Chief Inspector of the White Collar Crimes Division of the Royal St. Christopher and Nevis Police Force, committed by Culpepper, (xi) and Estates and Trustee are personally exposed to liabilities of Appellant's Nevis counter claims due to Culpepper's Nevis action negating the stay and indemnifications, predating the Ch. 7.

5. Appellee ignored his fiduciary duty to Estates' and Creditors' interests by hiring a

"Special Counsel" for copyright litigation who provably conceals his adverse interests and those of partners and clients he represents while contemptuously refusing disclosure required by the Court of Third Party Litigation Funding ("TPLF") information despite having admitted the principal litigant is not one of the "movie company" NPEs but the Republic of Cyprus NPE, PML Process Management Limited ("PML"), who's UBO, Benjamin Perino, directs Culpepper's copyright trolling while evading U.S. courts' discovery orders, German tax authorities, and criminal charges while based in Cyprus.

6. After Lawyer William Rouhana repeatedly invoked Fifth Amendment protections in CSSE's 341(a) meeting, which Appellant attended without objection, and Culpeper's admitted criminality, Trustee, his counsel failed to explain to the Court why "Copyright Litigation Services" beneficial to the Estates can be provided by Culpepper given his admitted crimes, TPLF concealment, and growing liability exposure. Instead, Trustee hid this from the Court, falsely presented Culpepper as qualified and improperly advised the Court to approve the retention despite knowledge criminality, conflicts, adverse interests, adverse pecuniary interests, TPLF concealment, and abysmal collections record.

7. The Estates, Trustee individually, Culpepper, Rothman, and their respective firms have no immunity in Nevis proceedings since Culpepper initiated a collection action in 2022 that invalidates the stay's protection. All are joined and liable for his criminality, and related civil damages, penalties, costs, and fees stemming from Appellant's claims.

## I. BACKGROUND

8. Appellee sandbagged Appellant the evening about seventeen (17) hours prior to

the 8 January 2025 hearing and denied the Court opportunity to hear Appellant's

ventilation of qualification deficiencies the "Special Counsel" for copyright litigation

services suffered, as outlined in his Objection. Over Appellant's objection and without

administering the Oath, the Court briefly queried Culpepper who refused to disclose his

previously evidenced TPLF arrangement, [Hrg. Tr. 20:2-11] and its questions made clear

the Court had not reviewed Appellant's Motion and therefore was unable to see that

Trustee's Counsel falsely advised the Court that Appellant was not a party in interest with

standing to object contrary to record proof [Hrg. Tr. at 7:17-10] why copyright litigation

services were needed when the record proves they are not, and how a criminal with

proven conflicts and adverse interest is uniquely qualified as a "Special Counsel".

9.  Unsworn, false, incomplete "testimony" and Counsel's false advice mistakenly led

the Court to state there were "no conflicts of interest" and "the terms of the retention

were appropriate", [Hrg. Tr. 21:23-22:0], then issue Order Granting Trustee's Application

for Approval of Retention of Culpepper IP, LLLC as *Special Copyright Litigation*

*Counsel* (emphasis added) and for Related Relief [Bankr. D.I. 547] overruling Appellant's

Objections, and without anticipation for reconsideration of the decision, or understanding

that all copyright litigation in Appellant's case concluded in 2021 in S.D. FL.

10. Prior to SMV's Ch. 7, Culpepper represented it in a contested proceeding over a

proof of claim in In re: Frontier Communications Corp. et al., #20-22476 (MG) (Bankr.

SD NY) and related ancillary proceeding: In re: subpoena to Reddit, Inc., Case no. 24-

3893 (9th Cir.), #24-80005-JD (ND CA). Apparently without volunteering or appearing

as a fact witness in either or engaging in criminal acts and employing the fruits thereof in

his litigation despite having done so repeatedly in his proceedings against Appellant.

11. After copyright litigation concluded in S.D. FL, Culpepper has unsuccessfully

attempted enforcing PML's fraudulent judgment in over half a dozen matters based on it:

In re: Millennium Funding, Inc., et al. v. 1701 Management LLC, et al., #21-cv-20861

(S.D. FL), spawning: (i) Millennium Funding, Inc., et al. v. AUH2O, LLC, et al.,

#NEVHCV2022/0183 (High Court of Justice, Federation of St. Christopher and Nevis,

Nevis Circuit); (ii) In re: Charles Muszynski, #23-02870(MCF) (Bankr. D.P.R.); (iii)

Muszynski v. Millennium Funding, Inc., et al., #24-11 (1st Cir. B.A.P.); and (iv) other

matters related to the fraudulent S.D.FL Judgment. Culpepper failed prevailing in any.

## II. ARGUMENT.

### A.   A Retention Order Is A Final Order.

12. Final orders may be appealed to the district court as of right, *see* 28 U.S.C. §

158(a)(1). Appellee's claim it an interlocutory is as incorrect and misleading as the

irrelevant qualifications argued under 28 U.S.C. § 1292(b) and Section 158(a).

13. This Circuit and others hold such orders to be final. *See In re BH P, Inc.*, 949

F.2d 1300, 1306=97 (3d Cir. 1991); *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 103-

05 (3d Cir. 1988); *Committee of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d

239, 241 (4th Cir. 1987).

14. Trustee and Counsel well know the Third Circuit employs a three-part test for

determining whether district courts' appellate orders in bankruptcy cases are appealable

by looking to "the impact of the matter on the assets of the bankruptcy estate, the

preclusive effect of a decision on the merits, and whether the interests of judicial economy will be furthered." *F/S Airlease*, 844 F.2d at 104. Courts applying those standards have concluded district court orders reviewing bankruptcy court decisions on conflict issues often are effectively "final" and properly appealable under section 158(d). *See e. g., In re B H P, Inc.*, 949 F.2d at 1307; F/S Airlease, 844 F.2d at 103. A bankruptcy court's order authorizing a trustee to retain counsel is a final order over which we have appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1). See In re Kurtzman, 194 F.3d 54, 57 (2d Cir. 1999); In re AroChem Corp., 176 F.3d 610, 620 (2d Cir. 1999). One Third Circuit opinion has stated, without discussion, that a bankruptcy court order approving the debtor's application for retention of counsel was final for jurisdictional purposes. See In re First Jersey Sec., Inc., 180 F.3d 504, 508 (3d Cir. 1999). The bankruptcy court's order regarding attorney compensation is a final order. See Boddy v. United States Bankruptcy Court (In re Boddy), 950 F.2d 334, 336 (6th Cir. 1991). In a previous case, we held that a district court order affirming, in part, a bankruptcy court's order granting a motion to remove a trustee and his counsel was a final order. See In re BH P Inc., 949 F.2d 1300, 1307 (3d Cir. 1991).

15. In the Third Circuit, inquiry begins and ends with *Palm Coast*. In *Palm Coast*, the bankruptcy court authorized a trustee to retain his own real estate firm as a consultant to the estate under 11 U.S.C. § 327. 101 F.3d at 255. After the district court affirmed the bankruptcy court decision, and the objector appealed, the 3rd Circuit Appellate Court took jurisdiction and reversed. In addressing jurisdiction, it noted the more flexible standard of finality that applies in bankruptcy cases, noting that orders in bankruptcy cases "'may be

immediately appealed if they finally dispose of discrete disputes within the larger

case.'" *Id.* at 256 (quoting *In re Johns-Manville Corp.*, 920 F.2d 121, 126 (2d Cir. 1990)).

16. Applying this test, the Third Circuit Panel first concluded that the underlying order

of the bankruptcy court was final, because "[n]othing in the order of the bankruptcy court

or its affirmance by the district court indicates any anticipation that the decision will be

reconsidered." *Id.* The panel also cited the district court's conclusion that the bankruptcy

court order was a "final order." *Id.* The court further noted that the district court's

disposition did not render the matter non-appealable because rather than "direct[ing]

further proceedings in the bankruptcy court," the district court merely "affirmed the

bankruptcy court's final order." *Id.* The court concluded that "[b]ecause the issue of

whether [appellee] can hire his real estate firm was finally decided, the district court's

order is appealable under subsection 158(d)." *Id.* Since the bankruptcy court order at

issue authorized a Trustee to retain counsel and indicated that this decision would not be

reconsidered, the order is final; accordingly, I have appellate jurisdiction pursuant to 28

USC § 158 (a)(1) to review it.- in In re Persaud, 2013

17. As in *Palm Coast*, this case involves denial of a disqualification motion under 11

U.S.C. § 327(a), *Palm Coast*'s reasoning applies to the orders issued by the bankruptcy

(or district) courts that conclude that it was indeed "final." For one, the bankruptcy court

did not suggest the order would be reconsidered. Further, as in *Palm Coast*, the district

court specifically held that the bankruptcy court's order was final. And, as in *Palm Coast*,

no order of any further proceedings in the bankruptcy court ensued. Under this standard,

Appellant's appeal should be heard. Once *Palm Coast* was decided it became binding

precedent, *see S R Co. of Kingston v. Latona Trucking*, <u>159 F.3d 80, 83</u> (2d Cir. 1998),

and the Court is bound to follow it "unless and until it is overruled by the Court *en*

*banc* or by the Supreme Court," *Jones v. Coughlin*, <u>45 F.3d 677, 679</u> (2d Cir. 1995) (per

curiam).

34. Trustee too cites that the Court should only hear an appeal of an interlocutory

order if an appellant "establishes [that] exceptional circumstances justify a departure

from the basic policy of postponing review until after the entry of final judgment." In re

Culp, 550 B.R. 694-95 (citing In re Del. And Hudson Ry. Co., 96 B.R. 469, 473 (D. Del.

1989), affd, 884 F.2d 1383 (3d Cir. 1989)); as is clearly the case in the instant matter.

### B. *Appellant Undeniably Has Standing.*

35. According to Third Circuit case law, arguments raised for the first time on appeal

are generally considered "waived" and will not be considered by the court, meaning a

party cannot bring up new arguments on appeal that were not presented during the trial

court proceedings; this principle is based on the idea that parties should have the

opportunity to fully develop the record in the lower court and that raising new arguments

on appeal can unfairly prejudice the opposing party. Simko v. U.S. Steel Corp. – this

Third Circuit case clearly stated that arguments raised for the first time on appeal are not

properly preserved for review. Spireas v. Fleet Bank of Pennsylvania – this case further

emphasized the importance of raising arguments in the lower court to avoid waiver on

appeal.

36. For the first time, Trustee argues Appellant lacks standing to appear or object to

the Retention Order, [Hrg. Tr. at 7:19-20], despite record facts: 1) Appellant's 12 August 2024 Notice Of Appearance [D.I. #230], unobjected; 2) appearance at lawyer William Rouhana's 18 December 2024 testimony in CSSE's 341(a) meeting, [D.I. #521], unobjected, 3) Appellant's Objection to Trustee's Engagement of Special Counsel, on 26 December 2024 [D.I. #524], 4) payment of Appellate Fees without objection, 5) and an 8 January 2025 Hearing appearance [D.I. #538], unobjected.

37. Trustee also ignores Appellant's pending claims against SMV, and forthcoming amendments thereto due to Culpepper's criminality, in Nevis' Court and an action in S.D. FL forthcoming to overturn fraud and criminality there. Appellee obviously waived ability to object by failing to timely do so at Appellant's multiple earlier appearances. See E. Sav. Bank, FSB v. LaFata (In re LaFata), 483 F.3d 13, 22 (1st Cir. 2007) (stating arguments raised for the first time on appeal are waived).

*C. Exceptional Circumstances under § 327(e) Prohibit Culpepper's Engagement.*

38. Appellee pretends ABA Model Rule 3.7, "Lawyer as Witness", does not exist and ignores Culpepper volunteered and appeared multiple times as a fact witness and ignores a Nevis Judge pronounced Culpepper's physical presence as fact witness will be required for testimony at the upcoming trial; status hearing scheduled 11 March 2025.

39. Section 327(e) has a three-prong test for employment of a special counsel. First, employment may only be authorized for a "specified special purpose" other than "conducting the case." The "special purpose" must be unrelated to debtor's reorganization and be "explicitly defined or described in the application seeking approval of the

attorney's employment." 3 Collier on Bankruptcy (15th Ed. Rev.) ¶ 327.04[9][d](2006).

Trustee defines the "special purpose" he requires is: "Copyright Litigation Services".

40. Second and third prongs of the test depend on the first. Once a purpose is

adequately and specifically defined, debtor must show the proposed attorney or law firm

"does not represent or hold any interest adverse to the debtor or to the estate" with respect

to the specified purpose of proposed employment. Debtor must also show employment of

the special counsel is for a specified purpose in the "best interest of the estate."

41. Multifaceted failure plagues Trustee's application, compounded by Culpepper's

proven criminality, lack of forthrightness, contemptuous concealment, and scamming the

Court to employ a copyright litigation specialist as a collection lawyer (albeit, an abysmal

one), Trustee's truthful intended purpose, while knowing copyright litigation concluded

in 2021 in Appellant's case after Culpepper defrauded S.D. FL for an unargued judgment.

42. Scores of joined NPE "movie companies" Creditors with adverse interests share in

Culpeper's proven pecuniary interests through 42 Ventures, LLC and PML's fee-splitting

TPLF. Not one waived in writing for Culpepper's retention by Trustee.

43. When an attorney is not a "disinterested person," but purports to act under the

exception of § 327(e), approval by the court must be explicit; it cannot take the form of

silent acquiescence. 3 Collier on Bankruptcy (15th Ed. Rev.), ¶ 327.04[9][d] (2006).

When the "adverse interest" specter looms like a dark cloud over a professional's

employment under § 327(e), the court must closely scrutinize the proposed "special

purpose" for that employment before it can properly consider the "adverse interest" and

"best interest of the estate" tests. The court may look at the totality of the circumstances

to determine whether the scope of work will, or has been, properly limited to a "special purpose" within the meaning of § 327(e). Those circumstances include the actual services performed by counsel before and after commencement of the case. A professional whose services may be vital to the debtor's reorganization effort, but who is not "disinterested" and eligible for employment under § 327(a), cannot circumvent that requirement by trying to characterize the employment as "special counsel" under § 327(e). In re Tidewater Memorial Hospital, Inc., 110 B.R. 221, 228 (Bankr. E.D.Va.1989). In order to employ counsel under § 327 (e), the trustee—in this case the Debtor, as the debtor in possession—must also show that the proposed employment is in the "best interest of the estate." 11 USC § 327 (e). - in In re Johnson, 2010 and 3 similar citations. The applicant seeking to employ special counsel has the burden of proof to show that employment is proper. - in IN RE SILVER LION, INC., 2010. Lawyers who fail to disclose timely and completely their conflicts proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order. - in IN RE FINAL ANALYSIS, INC., 2022

44. Culpepper admits PML (Benjamin Perino) is *the* principal litigant behind his judgment (and, undeniably his barratry partner) with authority to make material litigation decisions adverse to the Estates and other Creditors as a result of his TPLF arrangement. Contemptuously, Culpepper refuses to comply with Chief Judge Connolly's 18 April 2022 Standing Order Regarding Third-Party Litigation Funding Arrangements mandating disclosure by hiding behind "privilege" [Hrg. Tr. 20:9-11].

D. *Trustee Usurped Court's Payment Oversight Authority.*

Page 11 of 21

45. Its an exceptional circumstance when the Trustee bamboozles the Court to approve his Retention Agreement contravening § 330 protections reserved to the Court contrary to Statute and case law in addition to improper, unreviewed expense payment [D.I. 508]:

> 14.    As set forth fully in the Engagement Agreement, the Trustee has also agreed to reimburse the Culpepper Firm, solely from Cash Recoveries, for all costs and expenses incurred by the firm in connection with the Copyright Litigation Services in an amount not to exceed $25,000, subject to increase upon the Trustee's express approval (the "Expenses"). The Culpepper Firm has agreed to charge nothing for its professional services if there are no Cash Recoveries.
>
> 15.    In addition, in an effort to reduce the administrative expenses associated with filing separate fee applications, and given that the Fees are based on a percentage of Cash Recoveries
>
> 5
>
> LEGAL\74393334\2
>
> Case 24-11442-MFW    Doc 508    Filed 12/06/24    Page 6 of 7
>
> and not hourly, the Trustee requests that the Court authorize the Trustee to pay the Culpepper Firm the Contingency Fees and Expenses from Cash Recoveries without further order of Court.

46. [O]f a professional person operating under a conflict of interest. Thus, even where, as here, the professional's employment was previously approved by the bankruptcy court under § 327, § 330 (a) mandates that, before awarding compensation, the bankruptcy court take a "second look" at the validity of the employment under § 327 before awarding compensation. - in IN RE JOHNSON, 2004.

47. Trustee's agreement ignores § 327 and § 330 requirements and the liabilities

inuring to the Estates and Trustee individually from proven criminality, ignores that no exceptional circumstance justify retroactive engagement, and ignores that remuneration for expenses is prohibited, much less from Culpepper's ILOTA where joined "movie company" Creditors' un-waived claims still control.

48. "We have consistently rejected the contention that compensation from the estate under § 330 and approval under § 327 can be compressed into one step, and we have upheld scrutiny under § 330 as the mandatory second part of a two-step process." Thus, in In re Arkansas Company, Inc., 798 F.2d 645, 648-49 (3d Cir.1986). Attorney employed by chapter 11 debtor in possession as special criminal counsel under § 327 (e) was not entitled to be paid attorney fees from estate; even if attorney's retention as special counsel is approved by the bankruptcy court, attorney must still show that his services were necessary and benefitted the estate under § 330 - in In re Krause, 2006. This Court is mindful that 11 USC § 330 was intended to "eliminate abuses and detrimental practices attributable to attorney control of bankruptcy cases." - in Boyd v. Engman, 2009. Attorney employed by chapter 11 debtor in possession as special criminal counsel under § 327 (e) was not entitled to be paid attorney fees from estate; even if attorney's retention as special counsel is approved by the bankruptcy court, attorney must still show that his services were necessary and benefitted the estate under § 330 - in In re Krause, 2006.

E. *Leave To Appeal Unnecessary.*

49. The Order is final, not interlocutory. However, were Appellant required to seek leave to appeal and given circumstances hereing, he "establishes [that] exceptional circumstances justify a departure from the basic policy of postponing review until after

the entry of final judgment." In re Culp, 550 B.R. 694-95 (citing In re Del. And Hudson Ry. Co., 96 B.R. 469, 473 (D. Del. 1989), affd, 884 F.2d 1383 (3d Cir. 1989)). Appellant's appeal also meets the three conditions, although not required to, in Section 1292(b).

50. If Appellant were not appealing a final order and required to meet conditions in Section 1292(b) he would as: "an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial grounds for a difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation." In re AE Liquidation, Inc., 451 B.R. at 346 (citing 28 U.S.C. § 1292(b); In re Culp, 550 B.R. at 694; Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974)). In the instant matter, there is a difference of opinion on the application of the controlling law such as, but limited to ¶¶¶ 327(e), 328, and 330¶, and should the Appellate Court agree, the matter would terminate. Thus, even if the Appellate Court agrees 1292 applies, Appellant meets all three prongs. The Trustee is incorrect that the issue does not involve a controlling question of law, it does, and it involves the question of whether the law was correctly applied.

51. For example, in three recent cases, panels of the Second Circuit Court of Appeals concluded that bankruptcy court rulings allowing or refusing to allow a trustee to retain counsel or consultants were final orders. See In re Kurtzman, 194 F.3d 54, 57 (2d Cir. 1999) (bankruptcy court order refusing to allow trustee to hire law firm was final); Bank Brussels Lambert v. Coan (In re AroChem Corp.), 176 F.3d 610, 619-20 (2d Cir. 1999) (bankruptcy court order allowing trustee to hire law firm was final); Palm Coast, 101 F.3d at 256 (bankruptcy court order allowing retention of real estate firm as consultant was

final) The Palm Coast, AroChem and Kurtzman courts attached significance to the fact that "[n]othing in the order of the bankruptcy court . . . indicate[d] any anticipation that the decision [would] be reconsidered." Id.; see AroChem, 176 F.3d at 620;Kurtzman, 194 F.3d at 57.

52. Application of this approach leads to our conclusion in this case that the orders of both the bankruptcy court and the district court granting nunc pro tunc approval of Simon's employment as a broker were final. See In re Arkansas, 798 F.2d 645 (3d Cir.1986); Culpepper was engaged retroactively.

*Appellant Is Aggrieved.*

53. Standing to appeal an order entered by a Bankruptcy Court is limited to "persons aggrieved" by such order. In re Combustion Engineering, Inc., 391 F.3d 190, 214 (3d Cir. 2004). "Originally set forth in the Bankruptcy Act of 1898, the 'persons aggrieved' test now exists as a prudential standing requirement that limits bankruptcy appeals to persons 'whose rights or interests are 'directly and adversely affected pecuniarily' by an order or decree of the bankruptcy court.'" Id. See also, In re Cult Awareness Network, Inc., 151 F.3d 605 (7th Cir. 1998) ("To have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings. Only those persons affected pecuniarily by a bankruptcy order have standing to appeal that order.").

54. Appellant is directly affected by Culpepper's retention due to long-standing, continuing harms originating from Culpepper's fraudulently obtained judgment, proven criminality (per the White Collar Crimes Division in St. Christopher and Nevis), his admitted extortion and employment of extorted information in multiple prosecutions

against Appellant and having provably extorted multiple entities to commit similar criminal illegally favoring Culpepper (and Perino), causing years of harm to Appellant and his pecuniary interests.

55. Appellant's matter Nevis challenging an award of fees and costs to Culpepper is being amended for new claims reflecting Culpepper's proven criminality. The Estates and Trustee (individually) are now exposed to liability and status conference 11 March 2025 will calendar Culpepper's required physical presence as fact witness for trial timing coincidental with actions by the Director of Public Prosecution. Besides moving to dismiss the Nevis action for failure to prosecute, seeking fees, costs, penalties, fines and damages against the Estates, Culpepper, Rothman, their respective firms, and Trustee individually, Appellant will file to overturn the fraudulent S.D. FL judgment. Article III's standing requirement mandates only that an appellant's injury be "fairly traceable to the alleged illegal action." - in In re Wilson, 2016. Four years of abuse, expense, criminality, and contribution to Appellant's bankruptcy is patently aggrieving.

56. Appellant was and is aggrieved by the retention Order. Culpepper already filed papers upon retention by Trustee (authorized nun pro tunc by the Court) knowing that the Nevis case is being thrown out and that the costs, fees, and penalties will be assessed to the Estates, Trustee, and Culpepper. All intend on hiding behind the automatic stay to claim Appellant cannot collect. Culpepper and Trustee are bastardizing U.S. bankruptcy estate laws to subvert Nevis' law, weaponizing the stay to neuter Appellant's ability to defend himself, and are making a mockery of the stay's legitimate purpose by using the retention order to prevent Appellant from mounting a defense while Culpepper tells the

Nevis Court he was retained by a bankruptcy court in the US. Tails Culpepper wins, heads Appellant loses.

### F. Impermissible Provisions In Culpepper's Agreement.

57. Trustee engaged and authorized payment for Culpepper 28 November 2024, months before authorized to do so by Order on 14 January 2025 retroactively. Trustee conceals his TPLF in agreement language to protect the concealed party who obviously calls the shots. Despite extensive search no other agreements were found favoring other "Special Counsel" with such terms. Why did Trustee include such language knowing Culpepper cloaks the required TPLF information to this day? Screenshot below:

Case 24-11442-MFW    Doc 508-3    Filed 12/06/24    Page 5 of 10

In the event that Client receives funding from a third party such as a Litigation Funding company agreed upon by Client, which funding shall be subject to approval of the Bankruptcy

Just as Trustee stripped the Court's authority to review payments and allowed Culpepper to access IOLTA monies to be tapped without extraordinary circumstances existing to justify it, why would such language be included if not contemplated?

58. Trustee desires to conceal failures of fiduciary duties to the Estates and violations of bankruptcy procedure to engage "copyright litigation services" without any active copyright matters existing. Appellant's amended claims, Culpepper's pending criminal prosecutorial review, IOLTA funds tied to "Creditors" joined with SMV, the impossibility of any recovery, concealment, etc., how is this in the Estates' best interests.

59. Approval of employment of an attorney under § 327 does not constitute a right to

be paid from the estate. - in IN RE MIELL, 2009. An Order approving of a professional's retention under § 327 does not establish a right to be paid from the bankruptcy estate under § 330 and approval under § 327 establishes only that an attorney may be employed by the debtor in-possession, and not that his employment will therefore or thereafter be compensated from estate funds. Compensation from the estate, depends on the second look taken by the bankruptcy court as mandated by § 330, for a determination of "benefit-to-the-estate; in the instant matter, the Trustee, besides never seeking approval, mislead the Court, see: https://scholar.google.com/scholar_case?case=415012083151678193&q=327(e)&hl=en&as_sdt=4,76,90,100,108,123,298,299,300.

60. The Court did not determine "extraordinary circumstances" merited retroactive engagement for copyright litigation services despite requirement in the Third Circuit bankruptcy courts must find "extraordinary circumstances" - in IN RE YOUNG, 2022.

*G. Trustee's Retention Is For Multiple Purposes.*

61. Pursuant to § 328, Trustees may engage "Special Counsel" to handle *one matter*. Trustee states: "The Culpepper firm is well qualified to provide the Copyright Litigation Services", that's a field of practice, not one matter, [508, p.4, ¶12]:

> A. Qualifications and Proposed Services of Special Counsel
>
> 12.    The proposed employment of the Culpepper Firm is in the best interest of the Estates. The Culpepper Firm is well qualified to provide the Copyright Litigation Services. Mr. Culpepper, who would be primarily responsible for providing the Copyright Litigation Services, has advised companies with respect to the enforcement of their intellectual property rights for over 15 years and has substantial experience representing plaintiffs in infringement litigation.

Moreover, the Culpepper Firm has in-depth knowledge regarding the Debtors' copyrights and possible infringement claims.   Retaining new counsel would force the Estates to incur administrative expenses associated with getting the new firm up to speed on the Estates' copyright portfolio, and more importantly, could jeopardize the Estates' interests in the Pending Matters. Accordingly, the Culpepper Firm is well suited to provide the Copyright Litigation Services to the Estates.

62. Trustee's language in his draft [D.I. 508-2] and Retention draft [D.I. 542-2 ,¶2]:

be approved; IT IS HEREBY ORDERED

1.    The Application is granted as provided herein.

2.    Pursuant to section 327(e) of the Bankruptcy Code, the Trustee is authorized to retain the Culpepper Firm as special counsel to provide the Copyright Litigation Services to the Estates pursuant to the terms of the Engagement Agreement, effective as of October 1, 2024, and

Subsequent to conclusion of Appellant's 2021 copyright matter, why are "Copyright Litigation Services" required? How is retention justified for it in *multiple matters* for *collection* litigation, how is Culpepper qualified after four years of collection failure?

## III. CONCLUSION

63. Appellant requests that should the Court determine Appellant improperly sought appeal of an interocular order that it: "(1) treat the notice of appeal as a motion for leave to appeal and grant or deny it; or (2) order the appellant to file a motion for leave to appeal within 14 days after the order has been entered—unless the order provides otherwise." Fed. R. Bankr. P. 8004(d).

64. Conservation of court resources, proven extraordinary circumstances, and the need

to protect the Estates' assets favor denying Appellee's Dismissal. If these circumstances are ignored, unfolding events will require Trustee's actions be unwound at significant and easily foreseeable expense to the Estates. Third Circuit law <u>requires</u> an estate receive benefit from retaining a Special Counsel. It is impossible to argue how Culpepper's admitted and proven criminality, adverse interests, open-ended liabilities, IOLTA payment, and a $100,000.00 litigation bond in the Nevis matter will benefit the Estates and, given Appellant's pending and forthcoming claims against Culpepper, the Estates, and he Trustee, permitting retention under the above terms allows Culpepper to take ILOTA monies without Court oversight (a bond is an expense) then abandon the Nevis litigation. That money belongs to Appellant in a current, pending matter in Nevis. Appellant respectfully requests this Court dismiss Trustee's frivolous opposition and proceed with the Appeal.

Respectfully submitted,
28 February 2025

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies
424-333-0569