IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC., *et al.*, | : Chapter 7 |
| | : Case No. 24-11442 (MFW) |
| Debtors. | : (Jointly Administered) |
| | : |
| CHARLES MUSZYNSKI, | : |
| | : |
| Appellant, | : |
| v. | : |
| | : |
| GEORGE MILLER, solely in his capacity as Chapter 7 Trustee, | : Civ. No. 25-52-GBW |
| | : |
| Appellee. | : |

## MEMORANDUM

### I. INTRODUCTION

This dispute arises in the Chapter 7 cases of debtor Chicken Soup for the Soul, Inc. and certain of its affiliates (together, the "Debtors"). Appellee George L. Miller, in his capacity as Chapter 7 Trustee for the Debtors' estates, seeks to dismiss (D.I. 8) (the "Motion to Dismiss") the above-captioned appeal filed by *pro se* appellant Charles Muszynski (the "Appellant") with respect to the Bankruptcy Court's January 14, 2025 Order (Bankr. D.I. 547)[1] (the "Retention Order"), which (i) granted the Trustee's application to retain Culpepper IP, LLLC (the "Culpepper Firm"), as special counsel to pursue copyright litigation; and (ii) overruled Appellant's objection to the application.

In his Motion to Dismiss, the Trustee asserts that Appellant lacks appellate standing to challenge the Retention Order. The Trustee further asserts that the appeal of the Retention Order must be dismissed because it is an appeal of an interlocutory order, and Appellant has not sought leave pursuant to Rule 8004(2)(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1] The docket of the Chapter 7 cases, captioned *In re Chicken Soup for the Soul Entertainment Inc., et al.*, No. 24-11442 (MFW) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

1

Rules"). Even assuming that this Court treats Appellant's Notice of Appeal as a motion for leave to appeal pursuant to Federal Rule of Bankruptcy Procedure 8004(d)(1), the Trustee asserts that there is no basis for this Court to grant such leave. For the reasons set forth herein, the appeal of the Retention Order shall be dismissed for lack of appellate standing.

## II.   BACKGROUND

On June 29, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On July 10, 2024, the Bankruptcy Court entered an Order converting the cases from chapter 11 to chapter 7 of the Bankruptcy Code effective as of July 10, 2024. On July 11, 2024, the United States Trustee for Regions 3 and 9 appointed the Trustee as the Chapter 7 trustee of the Debtors' estates.

Prior to the Petition Date, the Debtors comprised one of the largest advertising-supported video-on-demand companies in the United States, with three flagship streaming services: Redbox, Crackle, and Chicken Soup for the Soul. Through Debtor Redbox Automated Retail LLC, the Debtors operated (i) Redbox Free Live TV, a free ad-supported streaming television service with approximately 180 channels, (ii) a transaction video-on-demand service, and (iii) a network of approximately 24,000 kiosks across the United States for DVD rentals.

Also prior to the Petition Date, Debtor Screen Media Ventures, LLC ("Screen Media") retained the Culpepper Firm to pursue copyright infringement litigation against various internet service providers. Specifically, the Culpeper Firm represented Screen Media, together with other plaintiffs, in litigation in the United States District Court for the Southern District of Florida against certain internet service providers, including Appellant and/or companies owned directly or indirectly by Appellant 1701 Management LLC d/b/a LiquidVPN, for alleged copyright infringement. It appears undisputed that Screen Media ultimately obtained a judgment against Appellant for $250,000 (the "Judgment") in that litigation. *See Millennium Funding, Inc., et al. v. 1701 Management LLC,*

2

*et al.*, 21-cv-20862-BB (S.D. Fla. Mar. 25, 2022), D.I. 213 (default judgment and permanent injunction). Appellant later filed a Chapter 7 bankruptcy in Puerto Rico, seeking to have the Judgment discharged; Appellant's Chapter 7 case was dismissed, however, and Appellant is currently appealing that order. *See In re Charles Muszynski*, Case No. 23-02870 (MCF) (Bankr. D.P.R. May 21, 2024), D.I. 185 (order dismissing Appellant's Chapter 7 case); *Muszynski v. Millennium Funding, Inc., et al.*, Case No. 24-11 (1st Cir. B.A.P. May 21, 2024) (Appellant's appeal of the order dismissing his Chapter 7 case). As of the Petition Date, the Culpepper Firm continued to represent Debtor Screen Media, together with its co-plaintiffs, in litigation to enforce the Judgment. Among other things, the Culpepper Firm sought to have the Judgment recognized and enforced in Nevis, where Appellant resides, leading to additional litigation. (*See* D.I. 8 at 3 (citing *Millennium Funding, Inc., et al. v. AUH2O, LLC, et al.*, Claim No. NEVHCV2022/0183 (Eastern Caribbean Supreme Court in The High Court of Justice St. Christopher and Nevis, Nevis Circuit); D.I. 9 at 5 (listing same litigation); Bankr. D.I. 552, Transcript of hearing held on Jan. 8, 2025 ("1/8/2025 Tr.") at 8:22-9:10).)

On December 6, 2024, the Trustee filed in the Bankruptcy Court an application seeking approval of the retention of the Culpepper Firm as special counsel (Bankr. D.I. 508) (the "Retention Application") *nunc pro tunc* to the Petition Date. Pursuant to the Retention Application, the Trustee sought authority to retain the Culpepper Firm pursuant to § 327(e) of the Bankruptcy Code to (i) continue representing Debtor Screen Media in the Judgment enforcement litigation with compensation based on a percentage of any recovery made on behalf of the Debtor, and (ii) represent the estates in any additional copyright infringement litigation that the Trustee may request that the Culpepper Firm pursue on behalf of the estates. On December 26, 2024, Appellant filed the *Objection to Trustee's Engagement of Special Counsel, Request for Disqualification of Culpepper IP, LLLC Pursuant to 105, 327(e), and 328(a) Request for Sanctions* (Bankr. D.I. 524) (the "Objection"). The Objection made numerous allegations regarding the Culpepper Firm and attorney Kerry Culpepper,

3

The Bankruptcy Court questioned Mr. Culpepper and also heard argument with respect to the litigation against Appellant and other issues raised in the Objection. The Bankruptcy Court further allowed Appellant an opportunity to examine Mr. Culpepper with respect to matters bearing on the alleged conflicts of interest. (*See id.* at 8:18–21:14.) The Bankruptcy Court rejected Appellant's argument that Kerry Culpepper "has continued to litigate in violation of ... the automatic stay in this case." (*Id.* at 30:13-23.) As the Bankruptcy Court explained to Appellant, "the automatic stay protects the debtor, not the defendants he is suing. A debtor can continue to prosecute actions against others. The automatic stay protects the debtors and the debtor's estate. So I think you have it in reverse. It doesn't protect you.") (*Id.* at 20:19-23.) Ultimately, the Bankruptcy Court approved the retention of the Culpepper Firm, finding that there were no conflicts of interest and that the terms of the retention were appropriate. (*See id.* at 22:6–23:3.) "Section 327(e) allows a party who has previously represented the debtor to now represent the trustee in that same manner," the Bankruptcy Court explained, finding it "perfectly appropriate that the trustee has selected to continue Mr. Culpepper's representation." (*Id.* at 22:22-23:1.) Regarding Appellant's argument that the Culpepper Firm also represented 42 Ventures and other plaintiff(s) in the Southern District of Florida litigation, the Bankruptcy Court did "not find any conflict in Mr. Culpepper representing this estate and the other plaintiffs in pursuing other parties that the other plaintiffs and the estate have similar claims against." (*Id.* at 22:6-9.)

On January 14, 2025, the Bankruptcy Court entered the Retention Order, overruling Appellant's Objection and granting the Retention Application. Appellant filed a timely Notice of Appeal. (D.I. 4 (amended and corrected notice).) On February 21, 2025, the Trustee filed the Motion to Dismiss. (D.I. 8.) On February 28, 2025, Appellant filed his response to the Motion to Dismiss (D.I. 9) (the "Response"). On March 11, 2025, the Trustee filed his reply in further support of the Motion to Dismiss (D.I. 10) (the "Reply"). On March 12, 2025, Appellant filed a Motion to Strike

the Trustee's Reply (D.I. 11) (the "Motion to Strike") on the basis that the Reply was untimely. The Trustee did not respond to the Motion to Strike.[2] No party requested oral argument.

## III. DISCUSSION

Although the Bankruptcy Code does not contain a provision for appellate standing, the Third Circuit has recognized that standing is a prerequisite to proceeding on appeal. *See In re Richardson Indus. Contractors, Inc.*, 189 Fed. App'x 91, 92 (3d Cir. 2006) (citing *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)). Appellate standing in bankruptcy is limited to "persons aggrieved" by an order of the Bankruptcy Court. *In re Revstone Indus. LLC*, 690 F. App'x 88, 89 (3d Cir. 2017) (citing *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004)). The "persons aggrieved" test "now exists as a prudential standing requirement that limits bankruptcy appeals to persons whose rights or interests are directly and adversely affected pecuniarily by an order or decree of the bankruptcy court." *Combustion*, 391 F.3d at 214 (internal quotation marks omitted). To be a person aggrieved, a party must show that they are challenging an order that "diminishes their property, increases their burdens, or impairs their rights." *Id.* (internal quotation marks omitted). This standard is "more restrictive than the case or controversy" standing requirement of Article III, with respect to which the injury "need not be financial and need only be fairly traceable to the alleged illegal action." *Id.* at 215 (quoting *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995) (internal quotation

---

[2] Appellant's Motion to Strikes seeks to strike the Trustee's Reply on the basis that it was filed past the 7-day deadline set forth in Bankruptcy Rule 8013(a)(3)(B) ("Unless the district court or BAP orders otherwise … the movant may--within 7 days after the response is served--file a reply that addresses only matters raised in the response"). Appellant's Certificate of Service attached to his Response indicates that it was delivered to the Court by "courier" and that it would be served on the Trustee "by way of the Court's CM/ECF system." (D.I. 9-1.) The date-stamped document reflects that this Court received Appellant's Response to the Motion to Dismiss on February 28, 2025. (*See* D.I. 9.) However, the docket of the appeal reflects that the Response was not docketed by this Court and electronically accessible on the Court's CM/ECF system until March 4, 2025. The Trustee filed his Reply on March 11, 2025, and within 7 days of the Court's docketing of Appellant's Response. The Court finds no hardship or prejudice to the Appellant. Accordingly, the Court will deny the Motion to Strike.

6

marks omitted). Rather, the Third Circuit requites the appealing party to be "directly affected" by the order not merely "exposed to some potential harm incident to the bankruptcy court's order." *Combustion*, 391 F.3d at 215. "This more stringent appellate standing requirement rests on the 'particularly acute' need to limit appeals in bankruptcy proceedings, which often involve a 'myriad of parties . . . indirectly affected by every bankruptcy court order." *Id.* (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988)). Whether an appellant is a "person aggrieved" is generally a question of fact for the district court. *See In re Dykes,* 10 F.3d at 188.

While Appellant clearly takes issue with the merits of the underlying Judgment and litigation to enforce the Judgment, he has failed to show how he is "directly and adversely affected pecuniarily" by the Retention Order. Appellant asserts his "pending claims" against the Debtors' estates, but he points to no proof of claim he has filed against the Debtors nor does he explain how retention of special counsel affects those claims. It appears that Appellant's "pending claims" are in the nature of possible claims against the estates that he speculates may arise out of a possible dismissal of the ***already filed*** Nevis action to recognize and enforce the Judgment. (*See* D.I. 9 at p. 16 of 21 (asserting "the Nevis case will be thrown out," and as a result, "costs, fees, and penalties will be assessed to the Estates, the Trustee, and Culpepper.")  Even assuming Appellant's prediction proves true, the Retention Order does not prevent Appellant from recovering any such costs and fees, and the Trustee will still need special counsel to represent him in any such matter.  Simply put, the only apparent harm to Appellant is that the Culpepper Firm will continue to prosecute the Debtors' causes of action against Appellant and attempt to recover on the Judgment for the benefit of the Debtors' estates. But Appellant's rights and interests are not "directly and adversely affected pecuniarily" by the retention of this particular law firm because any special counsel retained by the Trustee on behalf of the estates will continue the already filed Judgment enforcement litigation against Appellant.

Appellant further asserts that the Trustee has contested Appellant's standing for the first time in this appeal and therefore has somehow waived the argument. (*See* D.I. 9 at 8-9 (asserting that arguments raised for the first time on appeal should be deemed waived).) As an initial matter, regardless of whether it was raised below, this Court must be satisfied that Appellant has appellate standing—that he is "person[] aggrieved" by an order of the Bankruptcy Court—as a prerequisite to hearing the appeal. *See In re Richardson*, 189 Fed. App'x at 92. Moreover, Appellant's argument that the issue of standing was never raised is belied by the record below, in which: (a) the Trustee, through counsel, asserted that Appellant lacked standing, as he was neither a creditor nor a party in interest (1/8/2025 Tr. at 7:17-7:24 ("Your Honor, I've parsed through pretty carefully the objection, and candidly I think that it's not really comprehensible, nor does it make sense. He is not a creditor, nor is he a party in interest."); (b) Appellant admitted that the Trustee was correct (*id*. at 8:4-8:6 ("And I should also say I may not be a creditor of the estate yet, but when he presses the case in Nevis and it loses, they lose, I will become a creditor."); and (c) the Bankruptcy Court agreed with the Trustee (*id*. at 8:10-8:12 ("Well, you're not currently a creditor, Mr. Muszynski. You have no claim against the estate that's been confirmed by any court or by this Court.").)

Appellant further points to Trustee's failure to object to Appellant's filing a notice of appearance in the Chapter 7 cases and Appellant's attendance and participation at various hearings. (*See* D.I. 9 at p. 9 of 21.) "Appellee obviously waived ability to object," Appellant argues, "by failing to timely do so at Appellant's multiple earlier appearances." (*Id*.) Again, this Court must determine as a threshold matter whether appellate standing exists, regardless of the bankruptcy proceedings. Appellant's waiver argument is unavailing. The Bankruptcy Code provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). While this provision "confers broad

8

standing at the trial level," "courts do not extend that provision to appellate standing." *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000)). So even assuming that Appellant was a party in interest with standing to be heard at the trial level, the appellate standard is necessarily more stringent based on the "particularly acute" need to limit appeals in bankruptcy proceedings: "if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Travelers,* 45 F.3d at 541 (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (3d Cir. 1988). That standard is not met here.

Appellant has failed to show that he is "directly and adversely affected pecuniarily" by the Retention Order and therefore lacks appellate standing to pursue the appeal. Based on the foregoing, the Court need not address the parties' arguments regarding whether the Retention Order is interlocutory.

### IV. CONCLUSION

As Appellant lacks standing to appeal the Retention Order, and the appeal will be dismissed. An appropriate Order will be entered.

Date: July 22, 2025

_____
THE HONORABLE GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE